IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY SPANGLER and ANTHONY ROBINSON, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, ALFRED PERALES, Individually, ERIC HERSEY, Individually, FRANK CAPPITELLLI, Individually, and JOHN RICHARDSON, Individually, <br><br> Defendants. | Case No. 13 C 4859 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Anthony Robinson ("Robinson") and Timothy Spangler ("Spangler") (the "Plaintiffs"), two officers with the University of Illinois at Chicago Police Department (the "UICPD"), claim that the Board of Trustees of the University of Illinois (the "Board") and four individual Defendants (the "Individual Defendants") subjected them to racial discrimination, harassment, and retaliation. Defendants have moved for summary judgment as to both Robinson [ECF No. 58] and Spangler [ECF No. 55]. For the reasons stated herein, Defendants' Motion as to Robinson is granted in part and denied in part, and Defendants' Motion as to Spangler is granted.

## I.  BACKGROUND

As an initial matter, the Court must address Defendants' request to strike Plaintiffs' Local Rule 56.1(b)(3)(C) statements of additional facts. (*See,* ECF No. 68 at 3; ECF No. 69 at 3.) Local Rule 56.1(b)(3)(B) requires that the non-moving party respond to the moving party's statement of facts and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." However, "[i]t is inappropriate for a non-movant to include . . . facts extraneous to the substance of the paragraph to which the non-movant is responding." *Johnson v. Cnty. of Cook,* No. 08 C 2139, 2012 WL 2905485, at *12 (N.D. Ill. July 16, 2012). Instead, additional facts requiring the denial of summary judgment must be asserted in a separate statement of additional facts pursuant to Local Rule 56.1(b)(3)(C). Accordingly, and in lieu of striking Plaintiffs' statements of additional facts, the Court will "ignore extraneous matter in [Plaintiffs'] Local Rule 56.1(b)(3)(B) responses," but consider those facts "relevant to showing that [Defendants'] Local Rule 56.1(a)(3) assertions are genuinely disputed." *Levin v. Grecian,* 974 F.Supp.2d 1114, 1118 (N.D. Ill. 2013).

Robinson, who is biracial, has served as an officer with UICPD since 2008. Spangler, who is Caucasian, has served as a

UICPD officer since 1990. In 2007, Spangler assumed the role of sergeant, and in 2008, he was selected as third watch commander.

The Individual Defendants were all part of the UICPD chain of command during the relevant time period. John Richardson ("Richardson"), who is African-American, served as UICPD Chief from 2004 until 2014. Frank Cappitelli ("Cappitelli"), who is Caucasian, served as UICPD Field Services Division Commander from 2001 to 2014 and reported directly to Chief Richardson. Just below Cappitelli, Alfred Perales ("Perales"), who is Hispanic, and Eric Hersey ("Hersey"), who is African-American, served as Field Services lieutenants. In October 2012, Perales was transferred to Protective Services, where he worked as an Internal Affairs lieutenant until his retirement in 2014. Lieutenants in this role typically assist in the investigation of complaints against UICPD personnel.

## A. Facts Specific to Robinson

The issues giving rise to this lawsuit began early in 2012. On or about January 26, 2012, Perales asked Robinson about his failure to shave in accordance with UICPD grooming policy. Robinson had brought in a doctor's note seeking an exemption from shaving based on a skin condition, but the note contained little information. Perales subsequently requested that Robinson visit University of Illinois at Chicago ("UIC") Health Services to obtain an exemption.

Around February 16, 2012, Robinson met with Perales in Perales' office, where Hersey was also present. Perales told Robinson an anecdote, which he recounted as follows:

> Early on in my career I was approached by both UIC officers and Chicago police officers . . . and they used to tell me — and I used the N word, I used the word "nigger" . . . "We don't back those N word — we don't hang out with those guys, you shouldn't do that." And my response to [Robinson] was that I used to tell them, meaning the UIC and CPD officers that would use that type of language, that I didn't condone it, that I didn't appreciate them talking like that around me . . . I then related to Officer Robinson, "So, please Anthony, don't put that moniker on me. That's not what I'm about."

(Perales Dep. at 103:4–104:8.)

Several weeks passed, and in early March, Perales again called Robinson to his office. Robinson told Perales that he had scheduled a doctor's appointment, and then told Perales to look at the bumps and scars on his face. Perales responded: "[O]h, yeah, I see it, it must be the nigger in you." (Robinson Dep. at 161:8–161:16.) Another officer — Stephen Pawlik ("Pawlik") — overheard Perales' comment.

On March 14, 2012, Robinson submitted a grievance about this incident through the Metropolitan Alliance of Police ("MAP"). The following day, Robinson was asked to submit a sworn complaint as part of the UICPD disciplinary process. Robinson ultimately submitted the complaint on May 29, 2015. After completing its investigation on June 21, 2012, Internal Affairs recommended that

Perales receive a five-day suspension, but in late July, Chief Richardson suspended Perales for twenty days.

Robinson testified that on numerous occasions after he filed his grievance, Perales followed him while he was on duty. Pawlik also observed this behavior, and Spangler reported that Perales paid closer attention to Robinson than to other officers.

On September 13, 2012, Robinson filed a second MAP grievance, in which he stated that Perales had told another officer that Robinson and Pawlik needed to "watch [their] asses." (Robinson Dep. at 258:9-12.) Robinson filed a complaint with Internal Affairs the following day, claiming that Perales had threatened him. Perales was not found to have engaged in any wrongdoing, but Chief Richardson ultimately reassigned Perales to Protective Services, so that he was no longer in Robinson's line of command.

In late 2012, a sergeant position opened up. Part of the application process involved a civil service exam. The top three scorers on the civil service exam typically receive interviews with a panel of three UICPD commanders, including Cappitelli. Due to a tie, however, the top four scorers — Robinson, Gerald Jenkot ("Jenkot"), Christopher Gramley ("Gramley"), and Henry Jackson ("Jackson") — interviewed.

After the interviews, the commanders ranked the four candidates and provided their assessment to Chief Richardson in a written report. The commanders ranked Jenkot first and Robinson

fourth. They noted that Robinson — who had been a UICPD officer for four years at that point — had limited street experience and had the highest use of benefit time. (*See,* Robinson Ex. 101, ECF No. 61-29, at 2.) "Although this officer may one day be a fine supervisor," the commanders' report concluded, "this is not the day." (*Id.*)

The commanders noted that Jenkot – who had been a UICPD officer for fourteen years — had the most experience, received strong letters of recommendation, and had previously acted in the capacity of interim sergeant at UIC's hospital. (*Id.* at 1.) The commanders unanimously recommended Jenkot, who is Caucasian, even though he had received a disciplinary suspension seven years earlier.

In evaluating candidates for the sergeant position, Chief Richardson considered the commanders' recommendation, the number of years each candidate had served, and how the candidate interacted with the UIC community. Chief Richardson testified that he did not consider the amount of time that the candidate had taken off of work in making his decision. (Richardson Dep. at 139:11–12, 150:10–16.) Robinson disputes this fact, noting that Chief Richardson reviewed and signed a report to UIC's Office for Access and Equity that Cappitelli authored, which referenced Robinson's attendance record.

Throughout 2012, Robinson used vacation time, holidays, sick time, and Family Medical Leave Act ("FMLA") time to care for his mother. From January 1 to October 31, 2012, Robinson used 508 hours of benefit time, a portion of which constituted FMLA time. (*See,* Robinson Exs. 72 & 79, ECF Nos. 61-21 & 61-23.) The exact amount of hours constituting FMLA leave is disputed.

## B.  Facts Specific to Spangler

Spangler testified that on March 22, 2012, after Robinson had filed his MAP grievance, Perales and Hersey asked him to "go against" Robinson and Pawlik and "get some shit on them and write them up." (Spangler Dep. at 232:21-233:4.) According to Spangler, Hersey stated that Spangler had to take action so that Perales seemed uninvolved. Spangler told Hersey that he would treat all officers the same.

After this meeting, Spangler received two notices of infraction, one on March 22, 2012, and another on May 28, 2012. The March notice involved missing medical questionnaires from Spangler's watch. Hersey had asked all sergeants to return completed questionnaires by March 19, 2012, but had only received two of seventeen from Spangler. Spangler told Hersey that he had not submitted the questionnaires because he had been on vacation. On March 26, 2012, Hersey informed Spangler he was not in violation of any order, and the notice of infraction was rescinded. Nevertheless, Spangler filed a grievance through the

Fraternal Order of Police on March 27, 2012. In a June 13, 2012 report, Chief Richardson concluded that the notice of infraction had been unfounded.

On May 24, 2012, a serious incident occurred on campus. UIC's vice chancellor had previously asked UICPD to inform him of any serious incidents, and when he learned what happened, he contacted Chief Richardson to find out why he had not been notified. Perales issued a notice of infraction on Spangler to see why the incident had not been reported. Spangler noted that UICPD policy did not require him to notify the vice chancellor. Accordingly, Chief Richardson signed a finding on August 27, 2012 that the notice of infraction was "not sustained."

In June 2012, UICPD sergeants had the opportunity to select their shift or "watch." Sergeants typically pick their shifts every six months based on seniority. Spangler had served as third watch commander since 2008. The parties dispute whether Cappitelli had been satisfied with Spangler's performance up until June 2012. In any case, during the June 2012 selections, Sergeant Todd Edwards ("Edwards"), the second watch commander, was bumped into third watch. With two watch commanders — Edwards and Spangler — now in the third watch running, Cappitelli chose Edwards to be third watch commander because he believed Edwards, who is African-American, was a more effective leader than Spangler. Cappitelli also expressed concerns that Spangler did

not wish to be in Field Services, and did not spend sufficient time monitoring his officers or ensuring their compliance with UICPD policies. Cappitelli discussed his decision with Perales, but stated that the decision was his alone to make. As third watch commander, Edwards selected Sergeant Stan Grice ("Grice"), who is African-American, as his alternate. Edwards testified that he was under no pressure to choose Grice. Sergeant Donna Dudek ("Dudek") stated that Edwards told her he wanted to choose Spangler, but was directed by Cappitelli to choose Grice.

In late July, Spangler filed a grievance through the Fraternal Order of Police relating to the selection of Edwards as third watch commander. In the grievance, and at deposition, Spangler stated that Perales told him that he had selected Edwards. On September 6, 2012, Spangler filed a charge of discrimination claiming that he had been demoted based on his race and in retaliation for not targeting Robinson.

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving

party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which [it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463-64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ROBINSON

#### A. Hostile Work Environment (Counts I & IV)

In Counts I and IV, Robinson claims that Defendants subjected him to racial harassment and created a hostile work environment. Robinson argues that because Perales was his supervisor, the Board is vicariously liable for his actions. Even if Perales was not his supervisor, Robinson argues, the Board would still be liable for Chief Richardson's delay in disciplining Perales. Robinson does not address how Hersey or Cappitelli's actions contributed to a hostile work environment.

To survive summary judgment on a hostile work environment claim, a plaintiff must provide evidence sufficient to show that "(1) [he] was subject to unwelcome harassment; (2) the harassment was based on [his] race, (3) the harassment was severe and pervasive enough to alter the conditions of [his] employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability." *Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir. 2004). In assessing a hostile work environment claim, courts consider the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ellis v. CCA of Tenn. LLC,* 650 F.3d 640, 647 (7th Cir. 2011) (citation and internal quotations omitted). "A hostile work environment must be both objectively and subjectively offensive." *Luckie,* 389 F.3d at 714.

As the Seventh Circuit has observed, few actions can more quickly create an abusive working environment than a supervisor's use of a racial epithet in front of subordinates. *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993). There is no "magic number" of episodes that automatically generates a hostile work environment. *Cerros v. Steel Techs., Inc.,* 288 F.3d 1040, 1047 (7th Cir. 2002). "A sufficiently severe episode may occur as rarely as once, while a relentless pattern of

lesser harassment that extends over a long period of time also violates the statute." *Id.* (citations omitted).

The racial epithet that Perales used is reprehensible in any context. However, Robinson has failed to show how Perales' use of this term on two isolated occasions created a work environment that was "objectively hostile or offensive." Although Perales' language was humiliating, it was not frequent or physically threatening. The first time Perales used the term, he was quoting other officers in apparent disapproval. The impact of harassing language that is not directed at the plaintiff "is obviously not as great" as the impact of harassment that is. *Smith v. Ne. Ill. Univ.,* 388 F.3d 559, 567 (7th Cir. 2004) (citation and internal quotations omitted). Moreover, Robinson has presented no evidence that Perales' language interfered with his job performance, which, according to his own testimony, was exemplary and continually improving. (*See,* Robinson Dep. at 57:21–59:5.) Based on the context and frequency of Perales' language, and Robinson's own self-assessment of his ability to do his job, the Court cannot conclude that Perales' conduct was so severe and pervasive as to alter the conditions of Robinson's employment.

It is undisputed that Robinson did not file an internal complaint against Perales until May 29, 2012, and that Internal Affairs completed its investigation less than a month later. By the end of July, Chief Richardson had served Perales with a

disciplinary suspension notice exceeding Internal Affairs'
recommendation by fifteen days. The Court therefore finds no
basis for liability under Robinson's alternative theory, and
grants Defendants summary judgment on Counts I and IV.

## B. Racial Discrimination (Count II)

In Count II, Robinson claims that Defendants discriminated
against him on the basis of race when they failed to promote him
to sergeant. A plaintiff may establish racial discrimination
based on a failure to promote under either the direct method of
proof, or the indirect, burden-shifting method established in
*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Fischer v.
Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008). Under the
indirect method, a plaintiff must show that (1) he is a member of
a protected class, (2) he applied for and was qualified for the
position sought, (3) he was rejected for that position, and (4)
the position was given to someone outside the protected class who
was not better qualified than the plaintiff. *Id.* at 402. If the
plaintiff makes such a showing, the burden then shifts to the
defendant to set forth evidence supporting a finding that the
employment decision was non-discriminatory. *Id.* If the defendant
presents a legitimate, non-discriminatory basis for not promoting
the plaintiff, the burden shifts back to the plaintiff to show
that the defendant's proffered explanation is pretextual. *Id.*

When an employer's proffered non-discriminatory reason for an employment decision is that it selected the most qualified candidate, "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002) (citation and internal quotations omitted). That is, the plaintiff's credentials must be so superior "that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* at 1180–81 (citation and internal quotations omitted).

Here, Defendants contend that they chose Jenkot because he was more qualified than Robinson — specifically, Jenkot had fourteen years of experience to Robinson's four, worked as an interim sergeant at UIC's hospital, and received strong recommendations from his peers. Challenging these qualifications, Robinson argues that a jury could infer that he was the top candidate because he had superior policing statistics and test scores, had received numerous Officer of the Month awards, and supervisors frequently asked him for assistance. Moreover,

Robinson argues, Jenkot was ineligible for promotion because of his prior disciplinary incident.

Robinson's evidence is problematic for several reasons. First, although UICPD used civil service exam scores to determine who would interview for the sergeant position, the scores were not dispositive of who would be promoted. Second, even if Robinson had superior policing statistics, it is undisputed that such data was not used in evaluating sergeant candidates. Indeed, two of the four candidates — Jenkot and Gramley — were not included in officer statistical reports because they did not work patrol. Finally, Chief Richardson stated that Jenkot was eligible for the sergeant position in spite of his prior disciplinary incident. (Richardson Supp. Decl., ECF No. 69-1, ¶ 6.) Despite his arguments to the contrary, Robinson has produced no concrete evidence demonstrating that Jenkot could not be promoted.

Even if Robinson's remaining evidence — that supervisors routinely asked for his assistance and that he received awards — was sufficient to establish that he was more qualified than Jenkot, Robinson has failed to produce evidence showing that Defendants' selection of Jenkot was pretextual. "To show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest, and (2) the employer's true reason was based on a discriminatory intent." *Fischer,* 519 F.3d at 403 (citation, internal quotations, and alterations omitted). Even when a

business decision is unreasonable, "pretext does not exist if the decision-maker honestly believed the nondiscriminatory reason." *Stockwell v. City of Harvey,* 597 F.3d 895, 902 (7th Cir. 2010) (citation omitted).

As evidence of pretext, Robinson notes that Jenkot received a lower test score on the civil service exam and had no supervisory duties while serving as interim sergeant at the hospital. But, as the Seventh Circuit has cautioned, "evidence of . . . competing qualifications does not constitute evidence of pretext" unless a plaintiff's qualifications are clearly superior to the chosen applicant's. *Millbrook,* 280 F.3d at 1180. Robinson — who had a decade less experience than Jenkot — has not shown that his qualifications were so superior that no reasonable employer could have selected Jenkot. Courts do not sit as "superpersonnel departments" charged with determining whether an employer's business decision was correct. *Stockwell,* 597 F.3d at 902. Defendants have offered ample evidence supporting their belief that Jenkot was the more qualified and experienced candidate. Because Robinson has not provided any evidence suggesting that this rationale was a lie, the Court grants Defendants summary judgment on Count II.

## C. Retaliation (Count III)

In Count III, Robinson asserts that Defendants retaliated against him based on his complaints of racial discrimination and

harassment.  As with his underlying discrimination claim, Robinson may establish retaliation under the direct or indirect method of proof.  Under the direct method, Robinson must produce evidence sufficient to show that "(1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two." *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  "Under the indirect method, the first two elements remain the same, but instead of proving a direct causal link, the plaintiff must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination."  *Id.* at 786-87.  If a plaintiff establishes a *prima facie* case under the indirect method, the burden shifts back to the defendant to articulate a nondiscriminatory reason for its action.  *Id.* at 787.  If a defendant clears this hurdle, it is plaintiff's burden to demonstrate that the defendant's reason is pretextual.  *Id.*

Unlike the adverse employment actions required for a discrimination claim, the anti-retaliation provisions of Title VII and § 1981 are "not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 64 (2006). Instead, a materially adverse action is one that might dissuade a reasonable

employee "from making or supporting a charge of discrimination." *Id.* at 57.

Robinson contends that the following four incidents were materially adverse employment actions: (1) Perales' monitoring of him, (2) Perales' "heightened scrutiny" of his job performance, (3) Chief Richardson's decision to promote Jenkot, and (4) Chief Richardson's reassignment of Perales to Protective Services. The Court notes that Robinson's claim focuses exclusively on Perales' and Chief Richardson's actions, and does not attribute any retaliatory conduct to Cappitelli or Hersey.

Robinson was never disciplined or subject to a formal investigation, and he appears not to have suffered any formal consequences as a result of Perales' conduct. Nevertheless, a jury could reasonably infer that aggressive monitoring, "heightened scrutiny," and the denial of a higher paying position, are sufficiently adverse actions that could prevent employees from complaining of discrimination. Likewise, a jury could infer that transferring Perales — the subject of a discrimination complaint — to the internal unit charged with investigating such complaints, might also dissuade employees. To establish causation under the direct method, a plaintiff may rely on direct or circumstantial evidence. *Lang v. Ill. Dep't of Children & Family Servs.,* 361 F.3d 416, 419 (7th Cir. 2004). Although temporal proximity may serve as important evidence of causation, it is

insufficient to establish causation without "other evidence that supports the inference of a causal link." *Id.* In support of his causation argument, Robinson relies on (1) evidence that Perales directed Spangler to target him eight days after he complained of racial harassment, and (2) the temporal proximity between his complaints and Perales' monitoring and heightened scrutiny. (Robinson Resp., ECF No. 63, at 14.) The Court finds this combination of circumstantial evidence sufficient to establish a nexus between Robinson's complaints and Perales' conduct. *See, Lang,* 361 F.3d at 419 ("Close temporal proximity provides evidence of causation, and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link.").

Ignoring the potential connection between Robinson's complaints and Perales' actions, Defendants focus on Chief Richardson's actions. Here, Robinson's evidence falls short. Robinson argues that Chief Richardson was "waiting in the weeds" for the opportunity to deny him a promotion, but has failed come up with any evidence linking Chief Richardson's decision to his complaints. Indeed, the record is clear that Chief Richardson responded to Robinson's internal complaint by suspending Perales for twenty days instead of five.

Robinson's claim as to Chief Richardson fares no better under the indirect method of proof. Here, Robinson directs the Court's

attention to the arguments raised in his failure to promote claim. (*See,* Pl.'s Resp., ECF No. 63, at 14 n.12.) However, as discussed above, those arguments fail because Robinson has no evidence that Chief Richardson's reason for choosing Jenkot — qualifications and experience he believed to be superior — was pretextual.

The Court therefore grants Defendants' Motion for Summary Judgment on Count II as to Defendants Richardson, Hersey, and Cappitelli, but denies the Motion as to Defendant Perales and the Board.

### D.  FMLA Retaliation (Count IX)

In Count IX, Robinson asserts that Defendants retaliated against him based on his use of FMLA leave when they failed to promote him to sergeant.  Under the FMLA, it is unlawful for an employer to retaliate against an employee that exercises or attempts to exercise FMLA rights.  29 U.S.C. § 2615(a)(2).  The Court evaluates FMLA retaliation claims under the same framework as Title VII and § 1981 retaliation claims.  *See, Pagel v. TIN Inc.,* 695 F.3d 622, 631 (7th Cir. 2012).

Robinson argues that a reasonable jury could infer causation because Cappitelli and Chief Richardson held the use of FMLA time against Robinson, but not against other candidates. However, even though Cappitelli mentioned the use of FMLA time in the report that was submitted to Chief Richardson, Chief Richardson testified that he did not look at time off in making the sergeant decision.

(*See*, Richardson Dep. at 139:11–12, 150:10–16.) Thus, Cappitelli's reference to benefit time provides no evidence that Robinson was denied the promotion based on his use of FMLA leave. Because Robinson has failed to show that his use of FMLA leave time informed Chief Richardson's decision, his claim for FMLA retaliation fails. The Court therefore grants Defendants' Motion for Summary Judgment on Count IX.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO SPANGLER

### A. Retaliation (Count V)

In Count V, Spangler asserts that Defendants retaliated against him based on his refusal to "go against" Robinson. According to Spangler, Defendants' retaliatory acts included (1) the two notices of infraction he received, (2) his removal from watch commander, and (3) Perales' reassignment to Protective Services. Defendants contend that Spangler cannot establish a retaliation claim under the direct method of proof because he did not engage in protected conduct, suffered no adverse employment actions, and cannot establish causation. They also contend that his claim fails under the indirect method because he has no evidence of pretext.

Title VII's anti-retaliation provision extends to employees who have "opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Spangler has presented evidence that Perales and Hersey ordered him to take retaliatory actions against

Robinson based on Robinson's complaints of racial discrimination, and that he refused to comply. (*See, e.g.,* Spangler Ex. 49, ECF No. 64-22.) The Court finds that in opposing Perales' directive, Spangler engaged in protected conduct.

Defendants argue that Spangler's claimed retaliatory acts were not materially adverse. With respect to the notices of infraction, the Court agrees. As noted previously, in the retaliation context, materially adverse actions are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington,* 548 U.S. at 64. Nevertheless, even under this more lenient standard, the Seventh Circuit has noted that "unfair reprimands or negative performance evaluations, unaccompanied by some *tangible* job consequence, do not constitute adverse employment actions." *Jones v. Res-Care, Inc.,* 613 F.3d 665, 671 (7th Cir. 2010) (citation and internal quotations omitted); *see also, Chaib v. Ind.,* 744 F.3d 974, 987 (7th Cir. 2014) ("Even under the more generous standard that governs retaliation claims, a reprimand without more is not an adverse employment action.") (citation and internal quotations omitted), *cert. denied,* 135 S.Ct. 159 (2014). Although Spangler was issued two notices of infraction, Perales and Hersey quickly dropped their accusations of wrongdoing after speaking with him. The notices of infraction were, at most, "unfair reprimands" that were

quickly laid to rest and unlikely to dissuade other employees from complaining of racial discrimination.

That leaves Spangler's removal from watch commander and Perales' reassignment to Protective Services. It is well established that a decrease in wages or loss of a more distinguished title may constitute a materially adverse action. *See, Oest v. Ill. Dep't of Corr.,* 240 F.3d 605, 612–13 (7th Cir. 2001). Because Spangler has presented evidence that watch commanders earn more than other sergeants, and that within UICPD, watch commander is a relatively prestigious position, he has shown that his removal from this position constituted an adverse employment action.

Causation, however, is problematic. As an initial matter, Spangler must show that the decision-maker responsible for his removal was at least aware of his protected conduct. *See, Bernier v. Morningstar, Inc.,* 495 F.3d 369, 376 (7th Cir. 2007). Both Chief Richardson and Cappitelli testified that the decision to remove Spangler rested squarely in Cappitelli's hands. (Richardson Dep. at 124:12–15; Cappitelli Dep. at 37:15–38:9.) "While I did discuss it with Lt. Perales," Cappitelli stated, "the decision was mine to make based upon my individual evaluation of the performance and leadership of the Field Services Division's sergeants based on over 30 years of law enforcement supervisory

experience." (Cappitelli Decl., Defs.' Ex. F, ECF No. 57-7, ¶ 18.)

Spangler testified that Perales told him that he made the decision, (*see,* Spangler Dep. at 108:15-22, 116:7-18), but this statement is hearsay and fails to create a triable issue of fact as to who removed Spangler from watch commander. *See, Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). In the absence of evidence that *Cappitelli* knew of his protected conduct, Spangler cannot show causation under the direct method of proof or pretext under the indirect method.

As for Perales' reassignment to Protective Services, Spangler does not show how this action is connected to his initial refusal of Perales' order, which took place seven months earlier. The Court thus finds that Defendants are entitled to summary judgment on Count V.

## B. Racial Discrimination (Counts VI & VII)

In Counts VI and VII, Spangler claims that Defendants subjected him to discriminatory treatment when they removed him from the position of third watch commander and kept Edwards from selecting him as his alternate. In a reverse discrimination case such as this one, a plaintiff must establish a *prima facie* case of racial discrimination under a modified version of the *McDonnell*

*Douglas* test. Under the indirect method of proof, the plaintiff must show the following:

> (1) [B]ackground circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand; (2) that [he] suffered an adverse employment action; and (3) that [he] was treated less favorably than similarly situated individuals who are not members of the protected class.

*Good v. Univ. of Chi. Med. Ctr.,* 673 F.3d 670, 678 (7th Cir. 2012) (citation and internal quotations omitted). If a plaintiff satisfies his or her initial burden, the burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for its decision. *Id.* at 679. If the defendant does so, the burden returns to the plaintiff to prove that the defendant's explanation is pretextual. *Id.*

As evidence of suspicious background circumstances, Spangler broadly directs the Court's attention back to the arguments raised in support of his retaliation claim. (*See,* Spangler Resp., ECF No. 66. at 15 n.15.) As this Court has already concluded, however, Spangler has failed to present sufficient evidence to support a claim of retaliation. Critically, he has not shown that the decision-maker for watch commander — Cappitelli — even knew of his protected conduct. Spangler also relies on Dudek's declaration as evidence that Cappitelli forced Edwards to choose Grice as alternate watch commander. Not only is Dudek's retelling of what Edwards said hearsay, it is also contradicted by Edwards' own

testimony that he was under no pressure to select Grice. (Edwards Dep. at 42:6–43:1.) Because Spangler has not established the unusual background circumstances or "fishy facts" necessary to demonstrate UICPD's inclination to discriminate invidiously against whites, the Court grants Defendants summary judgment on Counts VI and VII.

### C. Violation of the Illinois Whistleblower Act (Count VIII)

In Count VIII, Spangler asserts a retaliation claim under the Illinois Whistleblower Act ("IWA") based on his refusal to comply with Perales' order. The IWA prohibits employers from retaliating against an employee who "refuse[s] to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. Under the IWA, "a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of that refusal." *Sardiga v. Northern Trust Co.,* 948 N.E.2d 652, 656–57 (Ill. App. Ct. 2011). Because Spangler has failed to connect his refusal to follow Perales' order to either of the two adverse actions identified above — his removal from watch commander or Perales' reassignment to Protective Services — he has failed to establish a claim under the IWA. *See, Nelson v. Levy Home Entm't, LLC,* No. 10 C 3954, 2012 WL 403974, at *8 (N.D. Ill. Feb. 8, 2012) ("A Whistleblower Act claim requires the plaintiff

to show that refusal to participate in an illegal activity caused [his] employer to retaliate against [him].”).  Defendants are therefore entitled to summary judgment on Count VIII.

<h2 style="text-align:center">V.  <u>CONCLUSION</u></h2>

For the reasons stated herein, Defendants' Motion for Summary Judgment as to Robinson [ECF No. 58] is granted in part and denied in part.  Defendants' Motion for Summary Judgment as to Spangler [ECF No. 55] is granted.

**IT IS SO ORDERED.**

_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated: 11/6/2015