# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHER DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANTHONY ROBINSON,

    Plaintiff,

v.

ALFRED PERALES, Individually, and BOARD OF TRUSTEES OF THE, UNIVERSITY OF ILLINOIS,

    Defendants.

Case No. 13 C 4859

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are several post-trial motions: Defendant Alfred Perales's Motion for Judgment as a Matter of Law [ECF No. 121], Plaintiff Anthony Robinson's Motion for a New Trial and to Alter the Judgment [ECF No. 128], and Plaintiff Anthony Robinson's Motion for Attorney Fees [ECF no. 119]. For the reasons stated herein, the Motions are denied.

## I. DISCUSSION

Plaintiff Anthony Robinson ("Robinson") worked as a campus police officer for the University of Illinois at Chicago Police Department ("UICPD"). He sued his supervisor, Alfred Perales ("Perales") and the UIC Board of Trustees ("the Board") for unlawful retaliation based on racial discrimination pursuant to Section 1981 and Title VII (Robinson is part African-American

and Perales is Hispanic). The case went to trial, and a jury returned a verdict against Perales but in favor of the Board. The following is a brief summary of some material facts drawn from the record. In considering Perales's request for a new trial, the Court construes these facts in the light most favorable to the non-moving party, Robinson. *See, Fine v. Ryan Intern. Airlines,* 305 F.3d 746, 752 (7th Cir. 2002).

The underlying suit started with Robinson's complaint about a racist statement made by Perales, his supervisor. In 2012, Perales inquired about Robinson's failure to shave in accordance with the UICPD's grooming policy. Robinson explained that it was the result of a skin condition for which he had a doctor's note indicating he should not shave. At some later point, Perales commented on Robinson's face: "Oh, I can see, it must be the nigger in you." (Trial Tr. 63).

Robinson filed a formal grievance about the remark. UICPD's internal affairs department recommended Perales's temporary suspension as punishment, which was carried out by the UIC Chief of Police. The events that occurred subsequent to Robinson's grievance form the basis of his claim for retaliation.

Robinson claimed that after his complaint, Perales began to follow him and to scrutinize his behavior and performance

heavily relative to other officers. For example, Perales would tail Robinson's car while Robinson was both on and off duty, although Robinson was unable to recall the exact dates of any specific instances. Other officers confirmed such behavior by Perales; for example, Officer Weiner testified that when he would ride with Robinson, the two often were tailed by Perales in an unmarked car. (Trial Tr. 204-205). And another officer, Sergeant Spangler, testified that Perales called him into his office one day during the relevant timeframe and told him that the supervisors needed to stick together, and that officers like Robinson were "a threat to all of us." (Trial Tr. 335-36). Spangler testified that Perales instructed him to "get some shit on [Robinson] and write him up," and that the reason was Robinson's complaint of racial discrimination. (Trial Tr. 336).

Perales argues that the evidence is insufficient as a matter of law to support the verdict in Robinson's favor. Specifically, he argues that Robinson did not present evidence of an adverse employment action or offer proof of causation linking Perales's conduct to Robinson's complaints of racial discrimination; both are elements Robinson was required to prove to succeed on his Section 1981 claim. *See, Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (noting that

Section 1981 retaliation is analyzed under the same legal framework as Title VII retaliation).

There is a high bar for when a judge may reverse a jury's verdict; "only if no rational jury could have found for the prevailing party" may the Court grant Perales' Motion for Judgment as a Matter of Law. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). Perales cites several cases that he believes establish a blanket rule supporting his position: "petty slights or minor annoyances," including aggressive monitoring and heightened scrutiny by a supervisor, do not constitute retaliation actionable under Section 1981. *See, Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006); *see also, Boss v. Castro,* Case No. 14-2996, 2016 WL 1073239 (7th Cir. 2016); *Bagwe v. Sedgwick Claims Mgmt. Servs.,* 811 F.3d 866, 888 (7th Cir. 2016). Both of the Seventh Circuit cases cited by Perales, *Boss* and *Bagwe,* suggest that whether retaliation is actionable turns on consideration of whether the retaliatory acts would be likely to deter a reasonable employee from engaging in protected activity (such as the filing of formal grievances). Both cases also involved appeals from orders of summary judgment, and there was evidence in each that the employee-plaintiffs exhibited deficient work performance that could explain the adverse actions taken against them.

Perales ignores that in this case, unlike in *Boss* and *Bagwe*, there was direct testimony that he instructed a subordinate to dig up dirt on Robinson after Robinson lodged a legitimate complaint. Listening to Sergeant Spangler's full testimony, the jury reasonably could deduce that Perales saw Robinson as a threat and wanted to get rid of him. That motivation also colored Perales's subsequent surveillance of Robinson, which Robinson and Officer Weiner testified was highly irregular.

It is true that increased surveillance and scrutiny of an employee are relatively trivial actions that a supervisor might exact on a complaining subordinate, and equally true that petty slights or annoyances, by themselves, do not constitute illegal retaliation. But in this case, the surveillance was coupled with evidence that Perales actively planned to damage or perhaps even end Robinson's career as a UIC police officer and that he attempted to enlist others in that effort. It defies common sense to argue that such behavior would not deter a reasonable employee from lodging future complaints; the stated intent to retaliate was expressly designed to suppress dissent, or at least a reasonable jury could so find. Similarly, it was not irrational for the jury to accept Sergeant Spangler's testimony

as proof of causation – namely, that Robinson's grievance was the but-for cause of Perales's conduct.

Perales counters that another person present at the meeting with Sergeant Spangler, Lieutenant Hersey, denied that Perales made any statements regarding an intention to torpedo Robinson. But the jury didn't believe Hersey's or Perales's account of events. Trials often boil down to credibility determinations, and it is not for the judge to upset them after a jury verdict. *See, e.g., Harvey v. Office of Banks and Real Estate,* 377 F.3d 698, 707 (7th Cir. 2004).

Robinson brings his own post-trial motions. First, he challenges the instructions given to the jury on the Title VII claim against the Board and the special verdict form, and argues these errors require a new trial. The instructions were flawed, he argues, because the jury should have understood that a finding of liability against Perales necessitated a finding of liability against the Board as well.

Robinson's objections to the jury instructions stem from a misunderstanding of his case. He continues to treat his claims against Perales and the Board interchangeably, but they are distinct: he brought (1) a claim of retaliation against Perales in Perales's individual capacity pursuant to 42 U.S.C. § 1981, and (2) a claim of retaliation against the Board pursuant to

Title VII of the Civil Rights Act of 1964.  This must be the case, because supervisors cannot be held liable in their individual capacities under Title VII, *see, Passananti v. Cook County,* 689 F.3d 655, 677 (7th Cir. 2012), and because the theory of *respondeat superior* does not apply to claims under Section 1981 and Robinson did not plead a *Monell* claim.  *See, Smith v. Chicago School Reform Bd. of Trustees,* 165 F.3d 1142, 1148 (7th Cir. 1999).

Due to this arrangement, the jury was allowed to find Perales liable in his individual capacity (as it did) under Section 1981, while finding no liability on the Title VII claim against the Board.  In fact, during the jury's deliberations, the foreman submitted a question to the Court asking whether it could find against Perales but in favor of the Board.  The Court discussed the question with counsel for both sides before providing an answer:

> THE COURT: All right. Here is the latest message I received at 3:16:  "Judge Leinenweber, is the jury able to find for the Board of UIC but against defendant Alfred Perales?"  The answer is "yes."  Any objection if I say that?
> PLAINTIFF: Can you read the question again, Judge?
> THE COURT: "Is the jury able to find for the Board of UIC but against defendant Alfred Perales?"
> PLAINTIFF: Yes.
> DEFENDANT: I think that's accurate.
> THE COURT: Pardon?

>      DEFENDANT: I think that is accurate.
>      THE COURT: Okay. I'll say "yes." Okay. Thank you.

(Trial Tr. 627).

So Robinson's counsel not only failed to object to this treatment, he actually sanctioned it. And counsel made no effort to differentiate the claims in his proposed jury instructions. The instructions he proposed did not indicate that a finding of liability for Perales necessitated a finding of liability for the Board, and neither did his proposed verdict forms. In fact, his proposed verdict forms, like the forms the Court ultimately adopted, explicitly allowed for separate findings for or against each Defendant. In civil cases, a failure to object to jury instructions waives a post-verdict argument that they were given in error. *See, e.g., Chestnut v. Hall,* 284 F.3d 816, 819-20 (7th Cir. 2002); *Carter v. Chicago Police Officers,* 165 F.3d 1071, 1077-78 (7th Cir. 1998). Given Robinson's utter failure to object to or attempt to clarify the instructions, the Court would be permitting sandbagging if it were to grant Robinson's motion and order a new trial.

A separate point is that liability against the Board would not change Robinson's recovery, because the jury did not believe that Robinson suffered anything other than nominal damages. It awarded him $1.00 in compensatory damages on the claim against Perales. Robinson argues that an error in the special verdict

form improperly influenced the jury and led to this outcome. The Special Verdict Form contained the following instruction regarding actual damages: "State the amount or, if you find that Plaintiff's damages do not have a monetary value, write in the nominal amount of One Dollar ($1.00)." Robinson argues that statement was unduly suggestive and misled the jury into believing his damages had no value. The more likely scenario is that he failed to offer convincing evidence of any damages other than nominal. Regardless, he has waived that argument as well, because he did not object to the Court's verdict form. It is true that the verdict form he proposed did not contain the instruction on nominal damages, but no matter; proposing a desired instruction and failing to object when the Court refuses to adopt it still leads to waiver of a challenge on a post-verdict motion. *See, Salazar v. City of Chicago,* 940 F.2d 233, 242 (7th Cir. 1991) (citing F ED. R. C IV. P. 51 and collecting cases).

The final motion to consider is Robinson's Motion for Attorneys' Fees. The Supreme Court has indicated that an award of attorneys' fees to a prevailing plaintiff may be improper when a plaintiff obtains a judgment but nevertheless achieves "only partial or limited success." *See, Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (internal citation omitted). Fees may be

particularly inappropriate in civil rights litigation when "a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief." *See, id*. at 115. That is the case with Robinson. His success was limited, to put it mildly. First, the Court dismissed several of his claims against the Defendants on summary judgment, and dismissed a second plaintiff from the case entirely. *See,* ECF No. 84, *Spangler v. Board of Trustees,* 2015 WL 6784339, (N.D. Ill. Nov. 6, 2015). Next, a jury vindicated the Board, and entered judgment against Perales, awarding Robinson only $1.00.

To demonstrate the disparity between what Robinson's attorneys believed the claims were worth and what the jury awarded, during closing arguments, Robinson's counsel suggested that the jury should award anywhere between $50,000.00 to $300,000.00 in compensatory damages and up to $500,000.00 in punitive damages. (Trial Tr. 590-91). The upshot is that Robinson won only .002% of the low end of his attorneys' valuation of his claims' worth. That's a negligible amount, and the disparity between the plaintiff's actual and expected recovery is the most important consideration in applying *Farrar*. *See, Aponte v. City of Chicago,* 728, F.3d 724, 731 (7th Cir. 2013). Further, the jury's decision to absolve the Board and to

find against Perales alone suggests this was "a mere personal victory without any identifiable, broader import to the public." *See, id*. That fact also weighs heavily in favor of denying fees; thus, the Court denies Robinson's Motion for Attorneys' Fees.

## II. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Denies Perales's Motion for Judgment as a Matter of Law [ECF No. 121];

2. Denies Robinson's Motion for a New Trial and to Alter the Judgment [ECF No. 128]; and

3. Denies Robinson's Motion for Attorney Fees [ECF No. 119].

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: August 11, 2016